[Civ. No. 11745.   First Dist., Div. One.   Jan. 21, 1942.]

THE UNIVERSITY REALTY COMPANY (a Corporation), Appellant, v. JOHN FRANCIS NEYLAN, Respondent.

Hankins & Hankins and Olin F. Nuckolls for Appellant.

Turner H. McBaine and A. M. Flood for Respondent.

WARD, J.—This is an appeal from a judgment by the court, sitting without a jury, in favor of defendant in an action to recover from him the sum of $1,050 alleged to be due plaintiff corporation, whose president, as real estate broker, conducted negotiations for the sale of certain real property.

For an understanding of the case, it is necessary to set forth the facts in detail. The property involved is owned by one Robert V. Anderson, a resident of New Jersey; is approximately 800 acres in extent and is situated in San Mateo County. The terms of the agreement for its sale are to be gathered from letters and telegrams exchanged between appellant and its principal, Anderson, and letters and conversations between appellant and respondent.

On May 23, 1939, Mr. Smith, president of appellant corporation, acting for Anderson, sought an interview with de-

fendant and offered to sell him the land for a price of $25,-000. This defendant declined, and made a counter offer in writing of $20,000, agreeing also to assume payment of $1,000 as the agent's commission as an additional consideration in the event the sale was consummated. The offer contained as conditions the following: "Title free and clear. No leases. No easements other than existing Rapley and Sumner road easements and P. G. & E. power line. Taxes to be prorated. I to have six weeks to examine title and close." On the same day appellant communicated with Anderson, stating that Neylan offered $20,000 cash, but did not mention that the latter agreed to assume payment of the commission as above. Anderson immediately, May 24th, replied by telegram, declining the offer, and suggested a compromise figure of $21,000 net to him, with $4,000 to be paid immediately to close the bargain. Thereupon, without any further communication with Neylan, appellant informed Anderson that Neylan had raised his offer $1,000 so as to net Anderson $20,000, and received from him, on May 27th, the following telegraphic reply: "Regret conditional offer fails to meet $21,000 minimum agreed with wife." Two days later, May 29th, appellant advised Anderson: "Neylan agrees to meet twenty-one thousand in accordance with telegram May 27th and accepts conditions. Will send deed for signatures. Please wire confirmation." Anderson sent the following reply: "I confirm agreement sale Neylan terms my telegram May 27th." On June 1st appellant advised Neylan of the interchange of telegrams between him and Anderson, and was immediately informed by Neylan in a letter dated June 2nd that he was surprised by the unqualified character of Smith's telegram to Anderson of the 29th regarding the acceptance of conditions, and further stating categorically that he did not propose to pay any deposit prior to the 5th day of July, and that the sale if made would not be predicated upon Anderson's wire of May 27th, but upon his, Neylan's, offer, with the sole modification that he would pay Anderson $21,-000 and would adjust the commission matter with appellant. On June 13th, appellant wrote Anderson that it had misunderstood the latter's telegram of May 27th; had thought that Anderson had waived the matter of a payment of $4,000 and had been endeavoring to get Neylan to agree to such a payment but without success.

On June 16th appellant wrote Neylan disclosing for the first time an encumbrance upon the property, involving a quarry on adjoining land with a road easement over the Anderson land. Appellant again wrote Neylan on June 22nd stating that it had advised Anderson of the full details as to how the deal would be closed in accordance with Neylan's offer, and that in the absence of hearing from Anderson it would appear that he was either out of town or acquiescing. Neylan replied on June 26th. He expressed concern about the encumbrance disclosed in the letter of June 16th, pointed out that he had already heard from the title company that it was ready to proceed but was awaiting instructions, and referred to the inadvisability of depending on Anderson's acquiescence through silence.

In a letter dated June 28th, appellant communicated to Neylan the following telegram from Anderson dated the previous day: "Authorize delivery deed to Neylan against payment on or before July fifth of $21,000 to my account American Trust Company, Palo Alto." On the following day, June 29th, Neylan in a conversation with Smith, in which the matter of the encumbrance on the property was discussed, informed the latter that if he would get an option to July 15th and deliver it to him before 5:00 P. M. of the 30th he would make the deal.

On the same day, June 29th, appellant sent Anderson the following telegram: "Rapley has leased quarry for county and other work. Neylan objects continuous hauling. Had Neylan up there; argued matter there and here and he finally agrees to waive objection if granted before to-morrow night ten day extension to close . . ." To this telegram Anderson immediately replied: "On strength Neylan's contract I refused other offer for property and made commitments relying upon him as man of his word. Will grant ten days' extension but only on condition that four thousand dollars part payment is deposited to my credit at American Trust Company by July fifth . . ." On June 30th appellant informed Anderson by wire that Neylan had accepted the condition—which was untrue—and mailed copy of the telegram to Neylan, who received it on July 3rd. Neylan thereupon, on the same date, wrote appellant in part as follows: "I did not, and do not, agree to deposit any money as a consideration for

an extension. The fact is, there was nothing to be extended. I did agree on Friday, June 30th, that I would deposit, on July 5th, $4,000 as a part payment on a total purchase price of $21,000 for the Anderson ranch, if by July 15th the California Pacific Title & Trust Co. will write a policy guaranteeing a clear title, with the exceptions noted in my original offer, plus an exception of the easement in relation to the Johnson quarry on the Rapley property which, prior to July 15th, must be reduced to legal form acceptable to me. . . . On Saturday morning your son read to me escrow instructions sent by you to the title company. One of these instructions was to the effect that I was to deposit on July 5th $4,000 in the American Trust Company to the credit of Professor Anderson. I was very much astonished at this instruction as I never contemplated the rather absurd suggestion that anyone would consider paying money to a seller for property in advance of a report on title. . . . I think this whole matter ought to be reduced to an orderly basis so as to avoid misunderstandings in the future. Therefore, let me outline these steps, which are essential if a deal is to be made: (1) Professor Anderson will deposit with the California Pacific Title & Trust Co. a grant deed acceptable to me, covering all of his holding of ranch land in the area of the Skyline Boulevard in San Mateo County; . . . (3) A definite legal agreement covering the matter of the privilege granted to Johnson operating the quarry on the Rapley property, which shall be in terms agreeable to me, must be deposited with the title company before July 15th; (4) The only other exceptions to clear title shall be those outlined in my original offer; (5) On July 5th, I shall deposit with the [title company] $4,000 to be held by them under instructions covering the entire deal; (6) On or before July 15th, I shall deposit with the [title company] an additional $17,000, being the balance of the purchase price of $21,000 which is to be paid Professor Anderson on July 15th if all conditions are complied with; (7) The matter of commission shall be adjusted between you and myself; (8) The payment of the commission by me, however, shall not be construed as giving you any agency from me, but as additional consideration for the property. To avoid any misunderstanding, I desire a confirmation of the terms herein set forth on the enclosed copy of this letter before five o'clock, Wednesday, July 5th."

On July 5th Neylan filed his instructions with the title company, in accordance with his letter to Smith of July 3rd, together with check for $4,000. On the following day, July 6th, Neylan and Smith had a telephone conversation. Appellant and its principal had failed to comply with Neylan's letter of July 3rd. In the conversation Neylan informed Smith that he was sick and tired of the whole matter; that his money was on deposit; that he was legally committed to Anderson, and demanded compliance of Anderson immediately. Smith asked Neylan to bear with him for a day or two and said he was getting in touch with Anderson immediately, to which Neylan replied: "Yes, wire Anderson immediately, and tell him that I am sick of this thing, and either get it cleared up or I am going to call the deal off."

On July 7th, Neylan wrote the title company suggesting a time for an examination by him of the deed and the hauling privilege, and stating that Mr. Smith had been requested to dispose of the conflict in the instructions.

With reference to the above telephone conversation of Neylan and Smith on July 6th, contrary to ·Neylan's request Smith did not wire Anderson, but wrote him on the 7th and did not receive a reply until July 11th.

In the meantime, the extension requested having been granted by Anderson only upon the condition, unacceptable to Neylan, that $4,000 should be deposited to the former's credit at his bank—the Anderson instructions to the title company being also to the same effect—Neylan wrote the title company advising that it had been impossible to reconcile the instructions and requesting a return of his deposit—which was done—and on the same day wrote Smith informing him of the course he had taken.

The complaint is in three counts. The first, to which defendant's demurrer was sustained without leave to amend, was based upon an express contract. Appellant's briefs do not discuss the sufficiency of this count against demurrer; hence it will be disregarded. The two counts upon which the action went to trial were common counts. Count two alleged that on or about July 8th defendant became indebted to plaintiff in the amount in dispute for services, work and labor performed by plaintiff as a real estate broker for defendant at his special instance and request. Count three alleged that between May 24, 1939 and July 15, 1939, plaintiff performed

services for defendant at his request, as broker, in the purchase of real estate.

The court made findings that plaintiff was not the agent of Neylan, but represented Anderson in negotiations for the purchase of the land; that there was no agreement in writing subscribed by defendant or any agent of his authorizing plaintiff as agent or broker to purchase the Anderson lands for compensation or a commission, but that defendant "did assume and promise in writing to pay the plaintiff's commission as a broker in the event that the defendant's proposed purchase of the Anderson lands was consummated;" that defendant's counter offer was not accepted within the time limits set therein, and that his proposed purchase was never consummated through no fault or wrongful act on his part. The remaining findings are to the effect that plaintiff was not employed to investigate water rights on neighboring lands in San Mateo County.

It is appellant's contention that through telegrams and other communications a contract of purchase and sale came into existence on May 31st, and that appellant at this point had earned its commission by bringing the parties together. This contention is not sound, for, as above shown, there had been a misrepresentation or misinterpretation on the part of appellant as to there having been a meeting of the minds of the contracting parties.

As found by the court, Neylan at no time employed appellant as a broker—his employment being by Anderson—and Neylan's promise to pay him the commission was as a further consideration for the conveyance of the land. The land through no fault of the respondent never having been conveyed, the stipulated consideration never became payable, either in whole or in part. (*Colton* v. *O'Brien,* 217 Cal. 551 [20 Pac. (2d) 43].) The situation is analogous to that in which the broker agrees to receive his commission out of the purchase price. In that case, if the purchase price for any reason is not paid, there is no fund out of which the commission is payable.

The respondent did not waive his right to rely on the terms of his agreement with Anderson by permitting a continuation of negotiations for its execution after July 5th, the limit of time set for its performance. As shown, Ander-

son's response to Neylan's request for an extension of time was a renewed demand for the payment of $4,000 to his credit at his bank as part payment of the purchase price; and the filing of vendor's instructions with the title company to that effect was entirely contrary to the agreement previously entered into between the parties in conformance with which Neylan's instructions were filed. The parties had never been able to agree on the steps necessary to be taken to consummate the sale, and this situation was ample justification for Neylan's determination to terminate the matter.

The evidence is ample to support the court's findings, and the judgment rendered. The judgment is affirmed.

Peters, P. J., and Jones (B. C.), J. pro tem., concurred.